## Solon S. Spalding *v.* Town of Waitsfield.[*]

### *Soldier's Bounty.*

The books and records in the office of the adjutant general of the state, and not the date of muster-in, control as to who apply on the quota of a town under a given call, so as to entitle them to a bounty under the vote of the town to pay a bounty to those who should enlist and be credited to the town on their quota under such call. *Vide Bucklin* v. *Sudbury,* 43 Vt. 700.

Assumpsit to recover a town bounty. Plea, the general issue, and trial by jury, March term, 1870, Peck, J., presiding.

October 17, 1863, the president of the United States called for 300,000 men. The quota of the town of Waitsfield under said call was fifteen men. At a legal town meeting held on the 27th November, 1863, the town passed the following resolution :—

" *Resolved,* 1st, That the selectmen be instructed to pay by " their order on the town treasury the sum or bounty of three

* This case was heard at the August term, 1870, and held for advisement till the general term in November, 1871.

" hundred dollars to each recruit belonging to this town, who shall
" enlist under the recent call of the President of the United States
" for 300,000 volunteers, and shall be credited toward our quota
" of said call as assessed by the governor and adjutant general
" of this state in General Order No. 2, dated Nov. 2, A. D. 1863,
" said bounty to be paid when the said recruit is mustered into the
" service of the United States."

In the summer of 1861, the plaintiff lived in Waitsfield, and en-
listed for said town in the 6th regiment Vt. volunteers, to serve
three years. On the 27th November, 1863, the plaintiff was with
his regiment at Brandy Station, Va. About the 8th or 10th of
November, 1863, one of the selectmen of Waitsfield, having heard
that an opportunity had been offered to the soldiers already in
the service in the field, who had served two years or more, to
re-enlist, immediately wrote to Lieut. Bushnell, who also belonged
to Waitsfield, and was an officer in the company in which the plain-
tiff was then serving, that Waitsfield had got to raise more sol-
diers, and asking him to see the soldiers of his company, and as-
certain if there were any who would re-enlist to the credit of the
town, and to ask them if a bounty of from $100 to $200 would be
any inducement to them to re-enlist. On receipt of said letter,
Bushnell informed the men of his company, of whom the plaintiff
was one, of its contents, and asked them to re-enlist for Waits-
field. But the men gave no encouragement that they would, and
Bushnell wrote the selectman about the 14th November, that he
could get no encouragement from his men that they would re
enlist, and that he thought the bounty would make no difference.
But Bushnell did not inform the plaintiff, or any of his men, what
answer he made to said letter. Bushnell's letter was read at
said meeting, before the vote was taken. About the 1st Decem-
ber, 1863, the plaintiff learned from letters he and other soldiers
received from home, that Waitsfield was paying a bounty of three
hundred dollars for men to serve on their said quota. It was also
known to the plaintiff that other towns in Vermont were paying
bounties for soldiers, some of them as high as four or five hundred
dollars. Knowing the above facts, and Bushnell telling his men
that he thought Waitsfield would pay as large bounty as other
towns, on the 16th December, 1863, the plaintiff, having then

served in the army some over two years, re-enlisted for three years, at Brandy Station, Va., and was on the same day mustered into the service, and set to the credit of Waitsfield, to apply on said quota, with the expectation of receiving a bounty from the town. Afterwards the plaintiff, with seven others who re-enlisted at the same time, all received a furlough for thirty days, and started for home January 1st, 1864. On the 15th of January, 1864, the plaintiff notified the selectmen of Waitsfield that he had re-enlisted to the credit of the town, and demanded a bounty. These eight men who re-enlisted, and of whom the plaintiff was one, were the first men mustered into the United States service to the credit of the town, after said call, and the first men mustered, after said vote, to apply on the quota of the town, as assessed by the governor and adjutant general of the state, in General Order No. 2, dated Nov. 2, 1863. On the 18th December, 1863, the town caused eight men to be mustered into the service on their said quota, and on the 25th December, 1863, four more men were mustered. On the fifth January, 1864, one of the selectmen was on his way to Brattleboro, with the last two men whom he had enlisted, to have them mustered in; and when he got to Roxbury, he was told that eight veterans had got off the cars at Roxbury, and gone home to Waitsfield, on a furlough, and that Capt. Crane, their captain, was aboard the train which he was then on; and he sought out said Crane before he got to Brattleboro, and learned from him that eight men had re-enlisted in the field, of whom the plaintiff was one, and been mustered in, to the credit of Waitsfield; and this was the first knowledge the selectmen had of the plaintiff's re-enlisting for the town. The selectman then requested one, or both, of his said recruits, not to go on to Brattleboro, but to return and let some of the veterans take their place. But one of them was mustered in on the 6th of January, and the other on the 8th.

It appeared that the muster-in rolls of the said eight re-enlisted men were not received at the adjutant general's office until the last days of January, 1864. At that time, the selectmen had raised seventeen men, besides the eight re-enlisted men, and paid them the bounty of $300 each. It appeared that the soldiers whom the

selectmen enlisted at home were credited at the adjutant general's office prior to any of the eight re-enlisted men. But it was not claimed that the re-enlisted men were in any way negligent in the matter, or that it was owing to any neglect of theirs that the muster-in rolls were not received earlier at the adjutant general's office.

Gen. Peck, assistant adjutant general of the state, testified, that he knew of no books and records where the towns had their accounts kept of debt and credit as to sol·liers, except in the adjutant general's office, and that by the books and records in that office, the plaintiff applied and was counted upon the call of the president of July 18th, 1864.

The next call of the president, after the call of October 17, 1863, was February, 1864. On this call, Waitsfield's quota was six men. The town had, besides the eight re-enlisted men, two surplus men, who, with four of the re-enlisted men, balanced said quota. On the 14th of March, 1864, another call was made, on which Waitsfield's quota was seven. That call was to equalize the draft of July, 1863; Waitsfield had eight men drafted, who were first, and before any other credits, applied in extinguishment of said quota, leaving one surplus man, who, with the last four of the eight veterans, of whom the plaintiff was one, was applied on the call of July, 1864.

The plaintiff offered to prove that that the town of Waitsfield paid bounties to soldiers to fill their quota on other calls after the call of October 17th, 1863; to which the defendant objected; which objection was overruled by the court, and the testimony received, to which the defendant excepted. The testimony showed that the town did pay bounties to fill its quotas on the calls after they had filled the quota under the call of October 17, 1863, and that to fill such quotas it paid not less than $300 to any one. After the testimony was closed, there was no dispute about the facts.

The court directed a verdict for the plaintiff.

*Clough & Carleton*, for the defendant.

*T. J. Deavitt*, for the plaintiff.

BARRETT, J.  In this case the court entertained the views embodied in the opinion drawn up in the case of *Bucklin* v. *Town of Sudbury*, argued at the general term in November, 1871.  The judgment is therefore reversed, and cause remanded.